1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

VALERIE GARCIA, ESTHER
SULLIVAN,

NO. 13-CV-259-MMA (JMA)

11

Plaintiffs,

**ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFFS'
FIRST AMENDED
COMPLAINT**

12

v.

13

14

ALPINE CREEKSIDE, INC, et al.,

[Doc. Nos. 24, 26]

Defendants.

15

16         Plaintiffs Valerie Garcia and Esther Sullivan (respectively, "Garcia" and

17   "Sullivan") bring this disability discrimination case against Defendants Alpine

18   Creekside, Inc., Willmark Communities, Inc., and Sandra Aramburo (respectively,

19   "Alpine Creekside," "Willmark," and "Aramburo").  Defendants now move to

20   dismiss Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim

21   upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

22   *See* Doc. Nos. 24, 26.  Plaintiffs filed oppositions to the motions, to which

23   Defendants replied.  *See* Doc. Nos. 30, 34, 36, 37.  For the following reasons, the

24   Court **GRANTS** Defendants' motions to dismiss.

25   / / /

26   / / /

27   / / /

28   / / /

1

# BACKGROUND[1]

2   Esther Sullivan resides within the Creekside Meadows Apartment complex in

3   Alpine, California.  She is 88 years old, and suffers from terminal cancer, among

4   other debilitating ailments.  Sullivan has lived in Creekside Meadows for

5   approximately 15 years.  Defendant Alpine Creekside owns the complex, which is

6   managed by Defendant Willmark.  In 2011, Sullivan's daughter, Mason–not a party

7   to this action–was added to the lease agreement and moved in with Sullivan to serve

8   as her in-home care provider.  In October 2012, Sullivan's treating physician, Dr.

9   Gilberto Cota, told Plaintiff Garcia, another daughter of Sullivan's, that he suspected

10  Mason had been physically abusing Sullivan.  Dr. Cota contacted Adult Protective

11  Services, who sent an investigator on at least three occasions to check on Sullivan.

12  After speaking with Dr. Cota, Garcia went to Sullivan's apartment and confronted

13  Mason concerning the allegations.  Garcia demanded that Mason remove herself

14  from the apartment.  Mason refused and contacted the Sheriff's Department in an

15  attempt to force Garcia from the premises.  When the deputies arrived, Garcia

16  informed them of the suspected abuse.  In response, the deputies told Mason that she

17  needed to remove herself from the apartment or they would forcibly remove her.

18  Subsequently, Defendants served Mason and Sullivan with notice that they

19  were required to vacate their rental within 60 days or face eviction.  The notice

20  stated:

21  During the course of your tenancy you have materially violated the lease
    agreement or, in the alternative, the landlord has "other good cause" as
22  defined in the lease, as follows:

23      a.      Over the course of your tenancy, there has been substantial
                in-fighting between you, your guests, relatives, and/or frequent
24              visitors, consisting of loud arguments, yelling, screaming, and
                fighting, resulting in numerous complaints by other residents of the
25              apartment community.  This behavior has resulted in trips to the
                apartment by Adult Protective Services and numerous call to, and

26

27  [1] Because this matter is before the Court on a motion to dismiss, the Court
    must accept as true the allegations of the complaint in question.  *Hospital Bldg. Co.*
28  *v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  All facts cited are taken from
    Plaintiffs' FAC unless otherwise noted.

1    visits incident reports by, San Diego County Sheriff deputies.
2    Further, this behavior causes concern for the general welfare of other residents of the community.

3    b.    Creekside Meadows management has been called on to listen to and mediate disputes between Valerie Garcia and Kathleen Mason.
4    Management cannot be placed in a position of being responsible for    α ensuring the health and safety of the elderly Esther Sullivan
5    under the circumstances presented.

6  [FAC ¶ 20.]

7    In response to receiving the notice, Garcia contacted Dr. Cota and asked him

8  to provide her with a written statement concerning the fact that he was treating

9  Sullivan for her disabilities.  Dr. Cota wrote a letter dated October 15, 2012 stating:

10    To whom it might concern:

11    Mrs. Sullivan is a 85 y.o female who is under my care at Alpine Family Medicine. Mrs. Sullivan has multiple conditions as hypertension,
12    sever low back pain, arthritis, anxiety, h.o colon cancer now status post colostomy and on colostomy bag, congestive heart failure, insomnia,
13    chronic kidney disease and coronary artery disease.  She has had falls and lacerations, [which is the] reason why I suspect some kind of elderly abuse
14    and called Adult Protective Services.  [It] [s]eems like she has changed caregivers and now feel[s] safe.
15    Mrs. Sullivan has multiple medical conditions [and] moving out could cause a lot of emotional stress and negatively impact in (sic) her
16    health.

17  [FAC ¶ 23.]

18    Garcia provided a copy of Dr. Cota's letter to Defendant Aramburo, the on-

19  site community manager.  Aramburo allegedly told Garcia that she would fax a copy

20  of it to her employer, presumably Willmark, and that she would talk to the

21  management company concerning the contents of Dr. Cota's letter.  On several

22  occasions thereafter, Garcia asked Aramburo if she had received a response from

23  Willmark regarding rescinding the eviction notice.  Aramburo indicated each time

24  that she had not received a response.  Meanwhile, in mid-November, 2012, Mason

25  removed herself from the apartment.  Garcia moved in and became Sullivan's in-

26  home care provider.

27    On December 13, 2012, pursuant to the eviction notice, Defendants filed an

28  Unlawful Detainer action against Sullivan and Mason in state court.  Trial was set

1  for February 1, 2013.  On the day of the trial, Plaintiffs filed the present suit, seeking

2  to enjoin the pending eviction.  On February 19, 2013, Defendants dismissed the

3  unlawful detainer action after Mason stipulated to canceling her tenancy and

4  removing her name from the lease.[2]  Accordingly, Sullivan was never evicted from

5  the apartment and continues to reside there with Garcia.

6  ## LEGAL STANDARD

7         Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion

8  the defense that the complaint "fail[s] to state a claim upon which relief can be

9  granted," generally referred to as a motion to dismiss.  The Court evaluates whether

10  a complaint states a cognizable legal theory and sufficient facts in light of Federal

11  Rule of Civil Procedure 8(a), which requires a "short and plain statement of the

12  claim showing that the pleader is entitled to relief."  Although Rule 8 "does not

13  require 'detailed factual allegations,' it [does] demand[] more than an unadorned,

14  the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

15  678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

16  550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In other words, "a

17  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

18  more than labels and conclusions, and a formulaic recitation of the elements of a

19  cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*,

20  478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  "Nor does a

21  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

22  enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

23         "To survive a motion to dismiss, a complaint must contain sufficient factual

24  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

25  (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is

26  facially plausible when the facts pled "allow[] the court to draw the reasonable

27

28         [2] This fact is taken from the "Stipulation For Entry of Dismissal" filed on
February 19, 2013 in the unlawful detainer action in state court.  As discussed
below, the Court takes judicial notice of the facts contained in this document.

- 4 -                                        13CV259

1    inference that the defendant is liable for the misconduct alleged." *Id.* (citing

2    *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but

3    there must be "more than a sheer possibility that a defendant has acted unlawfully."

4    *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible

5    entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

6         Further, the Court need not accept as true "legal conclusions" contained in the

7    complaint.  *Id.*  This review requires context-specific analysis involving the Court's

8    "judicial experience and common sense."  *Id.* at 679 (citation omitted).  "[W]here

9    the well-pleaded facts do not permit the court to infer more than the mere possibility

10   of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

11   pleader is entitled to relief.'"  *Id.*

12        Where a motion to dismiss is granted, "leave to amend should be granted

13   'unless the court determines that the allegation of other facts consistent with the

14   challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow*

15   *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co.*

16   *v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words,

17   where leave to amend would be futile, the Court may deny leave to amend.  *See*

18   *Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

                              **DISCUSSION**

19

20        **A.    Judicial Notice**

21        In support of their motion to dismiss, Defendants Willmark and Alpine

22   Creekside request that the Court take judicial notice of seven documents filed on the

23   record in California state court proceedings.  [*See* Doc. No. 24-2.]  Plaintiffs do not

24   oppose Defendants' request.  Under Federal Rule of Evidence 201(b), a district court

25   may take notice of facts not subject to reasonable dispute that are "capable of

26   accurate and ready determination by resort to sources whose accuracy cannot

27   reasonably be questioned."  Fed. R. Evid. 201(b).  The Court finds that the accuracy

28   of the documents filed in state court cannot reasonably be questioned because they

1
2
are publically filed court documents.  Thus, the Court **GRANTS** Defendants'
request for judicial notice.

3
4
5
6
7
Plaintiffs also request the Court to take judicial notice of two documents
promulgated by government agencies.[3]  [*See* Doc. No. 31.]  Defendants do not
oppose Plaintiffs' request.  The Court **GRANTS** Plaintiffs' request as the accuracy
of these publically available documents issued by governmental agencies cannot
reasonably be questioned.

8
### B.    Standing

9
10
11
12
13
14
15
Defendants first request that the Court dismiss Plaintiffs' FAC on the ground
that Sullivan and Garcia lack standing to pursue a disability discrimination claim.
The crux of this discussion involves whether Plaintiffs suffered any palpable injury
in light of the fact that they were never evicted and the eviction proceeding has been
dismissed.  The Court finds that the question of whether Plaintiffs suffered injuries
is unavoidably intertwined with the substantive analysis of Plaintiffs' claims.  Thus,
the Court proceeds to consider Plaintiffs' individual claims.

16
### C.    Individual Claims

17
#### 1.    *Claim One–Violation of FHHA*

18
19
20
21
22
23
24
25
Plaintiffs allege that Defendants discriminated against them on the basis of
Sullivan's disability in violation of the Fair Housing Amendments Act ("FHAA"),
42 U.S.C. § 3604, *et seq*.  Specifically, Plaintiffs allege that Dr. Cota's letter was a
request for "reasonable accommodation" which was subsequently denied when
Defendants refused to withdraw the eviction notice and proceeded to file the
unlawful detainer action.  Defendants argue that Dr. Cota's letter did not constitute a
reasonable accommodation request at all; instead, it was a "*demand* that Defendants
waive their rights under the law when a legitimate basis for good cause termination

26
27
28
---
[3] Plaintiffs also request that the Court take judicial notice of a document containing portions of the Code of Federal Regulations.  However, the Court need not take judicial notice of the C.F.R. in order to consider it when ruling on this motion.

existed." [Reply at 6, Doc. No. 37 (emphasis in original).][4]

"The FHAA provides that it is unlawful to discriminate against disabled persons in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of that buyer or renter. *Giebeler v. M & B Associates*, 343 F.3d 1143, 1146 (9th Cir. 2003) (citing 42 U.S.C. § 3604(f)(1)). "The FHAA's definition of prohibited discrimination encompasses 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Giebeler*, 343 F.3d at 1146 (citing 42 U.S.C. § 3604(f)(3)(B)).

The Court begins its analysis by questioning whether Defendants' alleged actions here even implicate the FHAA. It is undisputed that Sullivan and Garcia continue to reside in Sullivan's apartment within the Alpine Creekside complex. Nor were they at any time removed from the premises. Thus, there has been no denial of housing. Plaintiffs essentially claim that the *threatened* eviction and refusal to withdraw the eviction notice constituted a failure to reasonably accommodate Sullivan's disability. The Court finds no authority to support Plaintiffs' interpretation of "reasonable accommodation" law.

"To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Id.* at 1147 (quotations omitted). "The FHAA defines 'handicap' as 'a physical or mental impairment which substantially

---

[4] Defendant Aramburo raises additional arguments in her separate motion to dismiss [Doc. No. 26]. Because the Court finds that the following analysis applies equally to the claims against Aramburo, the Court does not individually address the additional arguments raised by Aramburo.

13CV259

1  limits one or more of such person's major life activities.'"  *Id.* (citing 42 U.S.C. §

2  3602(h)(1)).

3        There is no dispute that Sullivan is handicapped or that Defendants knew of

4  this fact.  Instead, the flaws in Plaintiffs' reasonable accommodation claim arise in

5  elements three and four.  Element three involves demonstrating that the

6  accommodation is necessary to afford plaintiff an equal opportunity to use and enjoy

7  the dwelling.  To establish necessity, "[p]laintiffs must show that, but for the

8  accommodation, they likely will be denied an equal opportunity to enjoy the housing

9  of their choice."  *Giebeler*, 343 F.3d at 1155 (quoting *Smith & Lee Assoc., Inc. v.*

10  *City of Taylor, Mich.*, 102 F.3d at 781, 795 (6th Cir. 1996)).

11        Plaintiffs fail to establish this element for two reasons.  First, Plaintiffs do not

12  allege that Defendants' policy denied Sullivan an *equal opportunity* to use and enjoy

13  the Creekside Apartments.  Instead, the relevant portion of the FAC states: "The

14  reasonable accommodation was necessary for plaintiff SULLIVAN to be able to

15  continue residing in the RENTAL UNIT, as moving her would have had a

16  substantial negative impact on her physical and emotional well being because of her

17  disabilities."  [FAC ¶ 53.]  Conspicuously absent is any mention of *equal*

18  *opportunity*.[5]  Erasing this key component of a disability discrimination claim

19  effectively places upon landlords a general duty to assist the disabled.  This is not

20  what the FHAA demands.  Instead, the FHAA requires landlords to make reasonable

21  accommodations in an effort to provide disabled individuals equal opportunity to

22  reside in the home of their choice.  *See City of Edmonds v. Wash. State Bldg. Code*

23  *Council*, 18 F.3d 802, 806 (9th Cir. 1994).

24        Second, the requested accommodation is not "necessary" because it fails the

25  requirement that an accommodation be linked to the inability to *use or enjoy the*

26  *premises because of a disability*.  *See Giebeler*, 343 F.3d at 1146.  Several examples

27

28        [5] The words "equal opportunity" appear twice in the FAC (*see* ¶¶ 64 & 73) but
only as statements of law, not as factual allegations.

1    from the Department of Housing and Urban Development and the Department of

2    Justice involving reasonable accommodations crystalize this requirement:[6]

3            **Example 1**: A housing provider has a policy of providing
     unassigned parking spaces to residents.  A resident with a mobility
4    impairment, who is substantially limited in her ability to walk, requests an
     assigned accessible parking space close to the entrance to her unit as a
5    reasonable accommodation.  There are available parking spaces near the
     entrance to her unit that are available to all residents on a first come, first
6    served basis.  The provider must make an exception to its policy of not
     providing assigned parking spaces to accommodate this resident.

7
             **Example 2**: A housing provider has a policy of requiring tenants to
8    come to the rental office in person to pay their rent.  A tenant has a mental
     disability that makes her afraid to leave her unit. Because of her disability,
9    she requests that she be permitted to have a friend mail her rent payment
     to the rental office as a reasonable accommodation.  The provider must
10   make an exception to its payment policy to accommodate this tenant.

11           **Example 3**: A housing provider has a "no pets" policy.  A tenant
     who is deaf requests that the provider allow him to keep a dog in his unit
12   as a reasonable accommodation.  The tenant explains that the dog is an
     assistance animal that will alert him to several sounds, including knocks
13   at the door, sounding of the smoke detector, the telephone ringing, and
     cars coming into the driveway.  The housing provider must make an
14   exception to its "no pets" policy to accommodate this tenant.

15
     [Joint Statement at 6-7.]  Each of these examples involve policies that directly limit
16
     an individual's ability to use and enjoy the leased premises because of the
17
     individual's disability.  Not so here.  The policy that Sullivan contests is that of
18
     "serving tenants with an eviction notice, and then filing an Unlawful Detainer action
19
     for the express purpose of removing Plaintiffs from the RENTAL UNIT . . . ."
20
     [FAC ¶ 54.]  Unlike the examples provided above, the policy of evicting tenants who
21
     violate provisions of their lease does not prevent disabled tenants from using the
22
     premises *because of their disability*.  Rather, these tenants are prevented from using
23

24

25

26

27          [6] Joint Statement of the Department of Housing and Urban Development and
     the Department of Justice, Reasonable Accommodations Under the Fair Housing Act
28   (May 17, 2004) ("Joint Statement"), available at http://www.justice.gov/crt/
     about/hce/joint_statement_ra.pdf (last visited June 19, 2013).

1   the premises simply because they violated their lease.[7]  There is thus no link between

2   this policy and Sullivan's disability.  While eviction forecloses a tenant's ability to

3   use the premises in the most basic sense of the word, eviction absent discrimination

4   does not violate the FHAA.

5          In sum, Plaintiff fails to demonstrate that accommodation of the handicap in

6   the method requested was necessary to afford Sullivan an equal opportunity to use

7   and enjoy the dwelling. Sullivan *has* an *equal opportunity* to use and enjoy her

8   apartment: she alleges no policies which make it more difficult for her to use and

9   enjoy the premises than non-disabled tenants.

10          Plaintiffs' case is also missing another fundamental element: a refusal to

11   accommodate.  Plaintiffs allege that Defendants "did not respond to the request for a

12   reasonable accommodation," [FAC ¶ 53] but they do not allege that Defendants

13   *refused* the request.  Likely, this is because Sullivan was never evicted from the

14   premises and still resides there.  Unless a request for a reasonable accommodation is

15   denied, Plaintiffs have not been discriminated against.  *See* 42 U.S.C. §

16   3604(f)(3)(B).  And unless there is or is about to be an occurrence of discrimination,

17   Plaintiffs do not have a cause of action.  *See* 42 U.S.C. § 3613(a)(1)(A).  While the

18   threat of eviction should not be taken lightly, this threat did not run afoul of

19   Plaintiffs' federal rights.

20          Finally, Plaintiffs' FHAA claim also fails because they do not allege that the

21   accommodation they seek is reasonable.  Under the FHAA, "only *reasonable*

22   accommodations that do not cause undue hardship or mandate fundamental changes

23   in a program are required." *Giebeler*, 343 F.3d at 1154 (emphasis added).  In

24   *Giebeler*, the Ninth Circuit noted that the law is unsettled with respect to whether a

25   plaintiff must show that the requested accommodation "seems reasonable on its face,

26   _____

27   [7] The Court notes that Plaintiffs contest the facts cited in the eviction notice.
    However, the more relevant point is that Plaintiffs do not contend or allege that
    Defendants were evicting Sullivan *because she was disabled.*  For purposes of this

28   motion, whether the facts in the eviction notice were true or not does not speak to
    whether Defendants discriminated against Plaintiffs on the basis of disability.

1    *i.e.*, ordinarily or in the run of cases," or if the plaintiff is "free to show that special

2    circumstances warrant a finding that . . . the requested accommodation is reasonable

3    on the particular facts." *Id.* at 1156 (quotations omitted).

4        If the former, the Court finds Plaintiffs' requested accommodation patently

5    unreasonable on its face.  For if the FHAA required ordinarily what Plaintiffs

6    demand, the FHAA would serve as an impenetrable shield against eviction.

7    Disabled tenants could miss all rent payments, play rock music long into the night,

8    spray weed killer on the neighbor's lawn, and throw stones at visitors yet manage to

9    stave off eviction by producing a doctor's note indicating that the tenant will suffer

10   emotional stress if forced to move.

11       If the latter, Plaintiffs have failed to allege facts to demonstrate that it was

12   reasonable for Defendants to rescind an eviction notice to allow Sullivan to remain

13   in the apartment.  Plaintiffs insist in their opposition brief that Defendants could

14   have bifurcated the lease, evicting only Mason while leaving Sullivan's tenancy in

15   tact.  Yet there are no allegations in the FAC which speak to whether bifurcation or

16   another remedy was reasonable.  The Court need not speculate now as to whether

17   bifurcation or another option was possible or reasonable.

18       In conclusion, Plaintiffs have failed to state a claim of disability

19   discrimination under the FHAA.  Because the Court finds that amendment of this

20   claim would be futile in light of the analysis above, the Court dismisses this claim

21   with prejudice.

22       2.      *Claim Two–Violation of Violence Against Women Act*

23       Plaintiffs second cause of action seeks recovery under 42 U.S.C. §

24   1437f(c)(9)(B) which provides, "[a]n incident or incidents of actual or threatened

25   domestic violence, dating violence, or stalking will not be construed as a serious or

26   repeated violation of the lease by the victim or threatened victim of that violence and

27   *shall not be good cause* for terminating the assistance, tenancy, or occupancy rights

28   of the victim of such violence."  42 U.S.C. § 1437f(c)(9)(B) (emphasis added).

1   Plaintiffs claim Defendants violated this provision by attempting to remove them

2   from the premises because of the acts of domestic violence committed against

3   Sullivan.  [*See* FAC ¶ 59.]  However, the notice of eviction was not based on any

4   acts of domestic violence.  Instead, the "good cause" cited by Defendants supporting

5   eviction included "substantial in-fighting between you, your guests, relatives, and/or

6   frequent visitors, consisting of loud arguments, yelling, screaming, and fighting,

7   resulting in numerous complaints by other residents of the apartment community."

8   [FAC ¶ 20.]  Additionally, Defendants did not receive Dr. Cota's note relaying his

9   suspicions of abuse–and were thus unaware of the possible violence–until *after* the

10   notice of eviction was provided.  Thus, no incidents of domestic violence were at

11   issue when the notice was issued.

12         Finally, as discussed, Sullivan's tenancy has not been terminated so there has

13   been no improper discrimination.  Plaintiffs fail to state a claim under 42 U.S.C. §

14   1437f(c)(9)(B).  As amendment is futile, the Court dismisses this claim with

15   prejudice.

16         *3.     Remaining Claims*

17         The Court has reviewed Plaintiffs' remaining causes of action and finds that

18   each are premised on Defendants' alleged disability discrimination discussed

19   previously in the Court's analysis of Plaintiffs' FHAA claim.  Because the Court

20   finds that Plaintiffs fail to properly allege disability discrimination, these remaining

21   claims necessarily fail and are dismissed with prejudice.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

13CV259

1

## CONCLUSION

2      Based on the foregoing, the Court **GRANTS** Defendants' motions and

3   **DISMISSES** Plaintiffs' First Amended Complaint with prejudice. The Clerk of

4   Court is instructed to terminate this case.

5      **IT IS SO ORDERED.**

6   DATED: June 25, 2013

7

8                                    Hon. Michael M. Anello
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28